IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| XZAVION DAYSHAUN RAGSDALE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:16-CV-273-Z |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY MOTION TO VACATE**

Before the Court is the *Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* filed by petitioner XZAVION DAYSHAUN RAGSDALE. [ECF 3]. For the reasons set forth below, the undersigned finds petitioner's motion to vacate should be denied.

I.
PROCEDURAL HISTORY

In January 2015, a Task Force Officer (TFO) with Homeland Security Investigations received information that on December 30, 2014, petitioner had used a Facebook account to attempt to recruit and/or entice an underage female, J.B., into prostitution. In late January, authorities also received information that a subject known as "Yung Billy" was suspected of recruiting and/or enticing teenage females into prostitution.

On March 30, 2015, the TFO, acting in an undercover capacity, set up a Facebook account representing himself/herself as a fifteen-year-old female, "A.M.," and initiated contact with "Yung

Billy."  A.M. then communicated with "Yung Billy" over the Facebook messaging system with "Yung Billy" subsequently approaching A.M. about working as a prostitute, specifically discussing possible earnings, prices for different sexual acts, how to solicit "tricks" through website advertising, where the acts of prostitution would take place, and explaining he would "teach [her] how to talk to them and wat [sic] questions to ask them."  "Yung Billy" advised he would have to discuss his proposition with A.M. in person or have one of his "cuzins [sic] girl explain" how A.M. could earn specific amounts of money for half-hour, hour or overnight time periods.  "Yung Billy" and A.M. did not communicate on March 31, 2015.

On April 1, 2015, A.M. reinitiated the online messaging conversation with "Yung Billy," resulting in "Yung Billy" sending A.M. his phone number.  Although A.M. and "Yung Billy" discussed meeting in person via messaging, no definite meeting arrangements were made.  The April 1, 2015 online messaging communication was the last communication between A.M. and "Yung Billy."  Investigation of the phone number provided by "Yung Billy" during that communication revealed petitioner was "Yung Billy."

On the evening of April 1, 2015, A.M. received a Facebook message from Deswan Newsome stating a friend had given him her contact information and told him to contact her about "making some money."  Newsome advised he had other young women working for him, explained how A.M. would be trained on particular sex acts, what her percentage of the proceeds would be, and discussed possible times to meet in person.

On April 2, 2015, a female Amarillo Police Department (APD) officer, posing as fifteen-year-old A.M., called Newsome at the number he had provided the TFO.  Newsome answered the phone, but then turned the call over to a female associate who discussed the specifics of prostituting

with A.M.  In subsequent messaging, the TFO, posing as A.M., specifically related to Newsome and his female associate that "she" was only fifteen years old.

The next day, the TFO, posing as A.M., arranged to meet with Newsome that evening at a convenience store in order for A.M. to engage in prostitution.  At the designated time, an individual matching Newsome's posted Facebook photos arrived at the store, with three other individuals, one a reported runaway, and was taken into custody by APD.

During his investigative interview, Newsome admitted soliciting A.M. through Facebook messaging to engage in prostitution, but explained someone else would "teach her the ropes" and that he would "turn her over to someone else to turn 'tricks' because he "wasn't going to be the one dealing with her" as she was only fifteen years old.  Newsome advised the prostitutes were not compensated with money, rather they received other items "bought for them."  Newsome admitted to authorities that from March 30, 2015 through April 3, 2015, he knowingly attempted to recruit, entice, harbor, transport, provide, obtain, and maintain by any means, in and affecting interstate and foreign commerce, "A.M.," knowing, and in reckless disregard of the fact, that "A.M." had not attained the age of 18 years and would be caused to engage in a commercial sex act.  Subsequent investigation revealed Newsome's extensive involvement in prostitution activities.[1]

On July 30, 2015, petitioner RAGSDALE was charged in a multi-count Indictment with two (2) counts of Attempted Sex Trafficking of a Child; Aiding and Abetting (Count 1 relating to the December 31, 2014 offense involving the underage female, "J.B.", and Count 2 relating to his involvement in the March 30, 2015 through April 3, 2015 offense involving the undercover officer,

---

[1]On May 21, 2015, Newsome was charged by Indictment with one count of Attempted Sex Trafficking of a Child; Aiding and Abetting (relating to the undercover officer, "A.M.").  *See United States v. Newsome*, No. 2:15-CR-62.

"A.M.," and Newsome), and one count of Attempted Transfer of Obscene Material to a Minor

(Count 3, presumably involving the undercover officer, "A.M."). *United States v. Ragsdale*, No.

2:15-CR-72-J. [ECF 3]. On October 23, 2015, counsel was appointed to represent petitioner.[2]

[ECF 11].

On November 5, 2015, petitioner signed a Factual Resume acknowledging he would be

pleading guilty to Count Two, Attempted Sex Trafficking of a Child; Aiding and Abetting (relating

to the undercover officer, "A.M"), for which the penalty was "[i]mprisonment for a period of not

less than ten years of for life." [ECF 21]. In acknowledging the elements of the offense, petitioner

admitted he "knowingly attempted to recruit, entice . . . a person that the defendant believed was

less than eighteen years old" and "knew that the person would be caused to engage in a commercial

sex act." Petitioner also admitted the following facts were true and formed the basis for his guilty

plea:

> From on or about March 30, 2015, through on or about April 3, 2015, in the
> Amarillo Division of the Northern District of Texas, and elsewhere, Xzavion
> Dashaun Ragsdale, also known as Yung Billy, defendant, knowingly attempted to
> recruit, entice . . . "A.M.," knowing, and in reckless disregard of the fact, that
> "A.M." had not attained the age of 18 years and would be caused to engage in a
> commercial sex act.

[*Id*.].

On that same date, petitioner signed a Plea Agreement providing, *inter alia*, that he would

enter a guilty plea to Count 2, Attempted Sex Trafficking of a Child – A.M. in exchange for the

Government dismissing the other two (2) counts alleged in the Indictment. [ECF 19]. Petitioner

acknowledged he understood the nature and elements of the offense to which he was pleading

guilty, and that he agreed the Factual Resume he had signed was true and would be submitted as

---

[2]On September 18, 2015, Newsome was sentenced to 135 months imprisonment in Cause No. 2:15-CR-62. Petitioner was in state custody in Dallas, Texas on unrelated charges from September 19, 2015 until he was transferred to federal custody via a writ on October 21, 2015.

evidence.  Petitioner acknowledged the penalty the Court could impose was "imprisonment for a period of not less than ten years up to life," but that he understood the sentence would be imposed by the Court after consideration of the Sentencing Guidelines and factors found in 18 U.S.C. § 1594(a), and that the guidelines were not binding on the Court.  Petitioner acknowledged he had reviewed the guidelines with counsel but understood no one could predict with certainty the outcome of the Court's consideration of the guidelines in his case.  Petitioner acknowledged he would not be allowed to withdraw his plea if his sentence was higher than expected, and that he fully understood the actual sentence imposed was solely in the discretion of the Court.  Petitioner averred his guilty plea was not the result of promises apart from those in the plea agreement, and that there had been no guarantees or promises from anyone as to what sentence the Court would impose.  Petitioner also acknowledged the Plea Agreement document was a complete statement of the parties' agreement.  [*Id*.].

On November 10, 2015, petitioner, pursuant to the plea agreement, entered a guilty plea to Count 2, Attempted Sex Trafficking of a Child – A.M. before the United States Magistrate Judge. [ECF 17, 22].  At the re-arraignment hearing, petitioner confirmed to the Court he was pleading guilty freely and voluntarily and that his plea was not the result of any force or threats or promises other than those in the Plea Agreement.  [ECF 41 at 18].  Petitioner further averred there had been no guarantees or promises from anyone as to what his sentence would be.  [*Id*.].  Petitioner also avowed there were not any "witnesses or anybody" counsel had not contacted for petitioner, nor was there anything counsel had not investigated that petitioner had wanted him to investigate.  [*Id*. at 20].  The Court advised petitioner the minimum term of imprisonment for the offense to which he was pleading was ten (10) years, confirming that petitioner did "understand the minimum punishment" and that he did "understand that a plea to this charge carries with it a mandatory

minimum of ten years imprisonment." [*Id*. at 21-23]. After again confirming no one had threatened or coerced petitioner to plead guilty and that no one had promised him what his sentence would be, the Magistrate Judge determined petitioner's guilty plea was knowingly and voluntarily entered and that the offense charged was supported by an independent basis in fact containing each of the essential elements of the offense. [*Id*. at 24-25]. Accordingly, the Magistrate Judge recommended the guilty plea be accepted and petitioner be adjudged guilty. [ECF 24].

On November 30, 2015, having received no objections to the recommendation and after making an independent examination of the records in the case, the United States District Judge found petitioner's guilty plea to have been knowingly and voluntarily entered, accepted both the guilty plea and the plea agreement, and continued the case for sentencing pending receipt of the probation officer's Presentence Investigation Report (PSR). [ECF 25].

On December 15, 2015, a PSR was prepared and filed of record utilizing the 2015 Guidelines Manual based on the April 3, 2015 date the Count 2 offense concluded. [ECF 26]. The PSR initially noted the offense's 10-year to life imprisonment sentence range, then detailed petitioner's full offense conduct as set forth above and attributed a Base Offense Level of 24 for the offense of Attempted Sex Trafficking of a Child. The PSR increased the Base Offense Level by 2 levels for unduly influencing a minor to engage in prohibited sexual conduct, as well as another 2 levels for using a computer or an interactive computer service to persuade, induce, or entice a minor to engage in prohibited sexual conduct, resulting in an Adjusted Offense Level of 28. After receiving a 3-level reduction for acceptance of responsibility, petitioner's Total Offense Level was 25. This Total Offense Level, with petitioner's total criminal history score of 3/Criminal History Category of II[3] resulted in a recommended Guideline Imprisonment Range of 63-78

---

[3]Petitioner's adult criminal convictions included unlawfully carrying a weapon (age 18), evading arrest/detention and criminal trespass of a building (age 19), for which he received 30-day jail sentences each.

months.  However, as the Count 2 offense of Attempted Sex Trafficking of a Child to which petitioner pleaded guilty carried a statutory minimum sentence of ten (10) years, the Guideline Term of Imprisonment was increased to 120 months (10 years).  Counsel for petitioner filed a statement stating petitioner had no objections to the PSR and adopting the PSR.  [ECF 28].

On January 22, 2016, the Court held petitioner's sentencing hearing.  [ECF 31].  At the hearing, petitioner confirmed he had read the PSR, believed he understood it, and thought everything in the PSR was correct.  [ECF 42 at 5].  During allocution, petitioner apologized for his actions, acknowledged the seriousness of the offense to which he plead guilty, noted he was only 19-years-old himself, and requested the Court "consider leniency" in assessing his punishment and sentence him "below the minimum sentence of ten years."  [*Id*. at 6].  The Government recommended the Court assess the statutory minimum 10-year sentence.  [*Id*. at 7].  Defense counsel also requested the Court consider petitioner's young age, the fact that the offense was an attempted offense, as well as petitioner's remorse, in assessing punishment.  [*Id*. at 8].  The Court then sentenced petitioner to a 120-month term of imprisonment in the United States Bureau of Prisons, the prescribed statutory minimum sentence, explaining the 120-month sentence would meet the Court's objectives of punishment and deterrence.[4]  [*Id*. at 9].  Judgment was entered that same date.  [ECF 33].  Petitioner did not appeal his conviction and sentence to the United States Court of Appeals for the Fifth Circuit.

On December 7, 2016, petitioner executed an affidavit averring, *inter alia*:

- counsel did not explain the plea agreement to petitioner and that if counsel had, petitioner would have rejected the plea offer;

- petitioner advised counsel he did not have the requisite intent necessary for Attempted Sex Trafficking of a Child, the offense to which he pleaded guilty, because he did not intend for Newsome to contact A.M.;

---

[4]On September 18, 2015, the Court had sentenced Newsome to a term of imprisonment of 135 months.

- counsel advised he would withdraw as counsel if petitioner insisted upon going to trial;

- counsel did not explain the nature or the elements of the crime to which petitioner was pleading, or the mandatory 10-year sentence;

- counsel failed to explain petitioner's actions in soliciting A.M. to engage in prostitution did not amount to a "substantial step" so as to constitute Attempted Sex Trafficking of a Child;

- petitioner abandoned the crime before it was completed;

- petitioner requested counsel question Newsome who had evidence that would "set [him] free" from the charge in the Indictment;

- counsel assured petitioner he would receive a 5-year specific sentence, induced petitioner's guilty plea by threatening to withdraw as counsel, threatened petitioner with a life sentence if he insisted on going to trial, and failed to explain more evidence was needed to convict petitioner of the Attempted Sex Trafficking of a Child offense.

On that same date, December 7, 2016, petitioner purportedly placed the instant *Motion Under 28 U.S.C. Section 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* in the prison mail system, together with a supporting memorandum and his affidavit. The Court received petitioner's motion and memorandum on December 27, 2016 and filed them of record. *Ragsdale v. United States*, No. 2:16-CV-273 [ECF 3]. Petitioner's motion and memorandum included grounds alleging his guilty plea to Count 2, Attempted Sex Trafficking of a Child – A.M. was involuntary and that counsel was "constitutionally ineffective." Included in petitioner's motion was a claim of post-judgment ineffective assistance of counsel for counsel's failure to file a notice of appeal or pursue a direct appeal challenging petitioner's conviction and sentence.

On June 21, 2017, defense counsel executed an affidavit addressing petitioner's claims of ineffective assistance of counsel and an involuntary plea. [ECF 10 at 3-4]. In his affidavit counsel averred, *inter alia*:

- petitioner understood the nature of the charges and the evidence that would be

presented against him, specifically his involvement in luring young women to engage in sexual activity in exchange for money;

- petitioner never denied his involvement in the criminal acts;

- counsel discussed at length the statutory minimum sentence attached to the offenses and petitioner understood the minimum sentence as ten (10) years;

- counsel never told petitioner that he would receive a five (5) year sentence;

- after petitioner was sentence to the 10-year minimum sentence, he told counsel he understood the judge had given him the minimum sentence allowed by the statute and accepted that punishment;

- at no time did counsel give petitioner inaccurate information or coerce him to do something against his will.

On July 17, 2017, the government filed its response in opposition to petitioner's motion, attaching counsel's affidavit. [ECF 9, 10]. On January 16, 2018, petitioner filed a reply to the government's response. [ECF 12].

On September 25, 2019, the undersigned conducted an evidentiary hearing on petitioner's claim of post-judgment ineffective assistance of counsel for failure to file an appeal on petitioner's behalf. [ECF 27]. Petitioner, represented by appointed counsel was present, as was counsel for the government. At the hearing, petitioner, through appointed counsel, withdrew this claim.

II.
PETITIONER'S ALLEGATIONS

In this motion to vacate and supporting memorandum, petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1.    Petitioner's guilty plea to Count 2 (Attempted Sex Trafficking of a Child – A.M.; Aiding and Abetting) was involuntary and/or unknowing because counsel:

    a.    threatened to withdraw as counsel when petitioner indicated he wanted to go to trial on all three (3) charged offenses instead of pleading guilty to one of the charged offenses;

b.    coerced petitioner by telling petitioner he would receive a life sentence if he did not enter a guilty plea to the one count and, instead, went to trial on all three (3) of the charged offenses;

c.    improperly promised petitioner he would receive a 5-year sentence if he pleaded guilty to Count 2, Attempted Sex Trafficking of a Child – A.M.; Aiding and Abetting;

d.    failed to advise petitioner there was insufficient evidence to prove petitioner had the requisite intent to commit Count 2, Attempted Sex Trafficking of a Child – A.M.;

e.    failed to advise petitioner he had a viable abandonment defense to Count 2, Attempted Sex Trafficking of a Child – A.M.; and

f.    failed to advise petitioner there was insufficient evidence to prove petitioner aided and abetted Count 2, Attempted Sex Trafficking of a Child – A.M..

2.    Petitioner was denied effective assistance of counsel at all times prior to his entry of a guilty plea because counsel:

a.    failed to adequately investigate to discover existing material, exculpatory evidence with regard to all of the charges;

b.    failed to advise petitioner there was insufficient evidence to prove petitioner had the requisite intent to commit Count 2, Attempted Sex Trafficking of a Child – A.M.;[5]

c.    failed to advise petitioner he had a viable abandonment defense to Count 2, Attempted Sex Trafficking of a Child – A.M.;

d.    failed to advise petitioner there was insufficient evidence to prove petitioner aided and abetted Count 2, Attempted Sex Trafficking of a Child – A.M.;

e.    improperly advised petitioner he would receive a life sentence if he did not enter a guilty plea to Count 2 and went to trial on all three (3) of the charged offenses; and

---

[5]Although petitioner phrases his claim as counsel being ineffective for failing to "object to the evidence presented at trial" as insufficient, the undersigned reviews petitioner's claims in the context of misadvising petitioner as to the sufficiency of the evidence to convict him during the pre-plea stage of the proceeding.

      f.      improperly promised petitioner he would receive a 5-year sentence if he pleaded guilty to Count 2, Attempted Sex Trafficking of a Child – A.M.; Aiding and Abetting.

3.      Petitioner was denied effective assistance of counsel during the sentencing phase of the proceeding because counsel failed to:

      a.      object to the use of the 2015 Guidelines Manual in computing petitioner's offense level, criminal history category, and recommended Guideline Imprisonment Range; and

      b.      object to the two-level increase to the offense level for "unduly influenc[ing] a minor to engage in prohibited sexual conduct."[6]

## III.
## MERITS

In its response filed July 17, 2017, the government thoroughly and accurately briefed statutory and case law regarding the applicable standards of review for relief under 28 U.S.C. § 2255 proceedings. [ECF 9 at 11]. It is not necessary to simply repeat the government's briefing in these findings, conclusions and recommendation regarding the clearly established standards of review this Court must follow.

### A. Voluntariness of Guilty Plea to Count 2
### (Attempted Sex Trafficking of a Minor – A.M.)

Throughout his pleadings, petitioner asserts his guilty plea to Count 2, Attempted Sex Trafficking of a Minor (involving the undercover officer as A.M.) was involuntarily and unknowingly entered. Specifically, petitioner appears to argue his guilty plea to this one count was involuntary because counsel had: (1) threatened to withdraw from the case when petitioner

---

[6]Again, petitioner's claim that he was denied effective assistance of counsel after the entry of judgment in the criminal proceeding because counsel failed to file a notice of appeal on petitioner's behalf challenging his conviction and sentence was withdrawn at the September 2019 evidentiary hearing.

indicated he wanted to go to trial on all three (3) charged offenses instead of pleading guilty to one of the charged offenses; (2) coerced petitioner by telling him he would receive a life sentence if he did not enter a guilty plea to the one count and, instead, went to trial on all three (3) of the charged offenses; (3) improperly promised petitioner he would receive a 5-year sentence if he pleaded guilty to Count 2, Attempted Sex Trafficking of a Child – A.M.; and (4) induced petitioner's guilty plea based on faulty and erroneous legal advice, *viz.*, failing to advise him there was insufficient evidence for the Government to prove petitioner had the requisite intent element for Count 2, Attempted Sex Trafficking of a Minor – A.M., or that he aided and abetted the offense, and that he had a viable defense to Count 2, Attempted Sex Trafficking of a Child – A.M. based on his abandonment of the offense.

A guilty plea is a waiver of certain constitutional rights; therefore, a defendant must make a guilty plea intelligently and voluntarily for it to be effective. *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). It is well settled that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). A guilty plea is made intelligently when the defendant has "real notice of the true nature of the charge against him" and is "fully aware of the direct consequences" of his plea. *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal marks omitted); *Brady v. United States*, 397 U.S. 742, 755 (1970). A guilty plea is voluntary if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya,* 111 F.3d 386, 389 (5th Cir. 1997). Whether a guilty plea is knowing looks to whether the defendant understands the direct consequences of his plea, including the maximum possible penalty. *United States v. Hernandez*, 234 F.3d 252, 255 n. 3 (5th Cir. 2000).

The Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the

absence of coercion; (2) a full understanding of the charges; and (3) a realistic appreciation of the consequences of the plea. *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). Compliance with the admonishments required under Rule 11 of the Federal Rules of Criminal Procedure provides "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

The courts' "willingness to accept plea agreements and colloquies" in determining whether a defendant is making a knowing and voluntary guilty plea that has a factual basis to support it "demands a corollary respect for the integrity of their contents." *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006). In that regard, "the representations of the defendant, his lawyer, and the prosecutor . . . in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977), and "signed, unambiguous" plea documents submitted contemporaneously with a guilty plea are "accorded great evidentiary weight." *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994). These representations, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier" that any self-serving, unsupported, and after-the-fact allegations to the contrary will fail to break through. *Blackledge*, 431 U.S. at 74.

### 1. Threats and Coercion

Petitioner contends his guilty plea to Count 2 is involuntary because counsel threatened to withdraw when petitioner indicated he wanted to go to trial on all three (3) charged offenses instead of pleading guilty to one of the charged offenses. Petitioner further contends his guilty plea to Count 2 is involuntary because counsel coerced petitioner by telling petitioner he would receive a life sentence if he went to trial on all three (3) of the charged offenses instead of entering a guilty plea to the one count.

As detailed above, petitioner assured the Court in writing, in his signed Plea Agreement,

that his guilty plea was "freely and voluntarily made" and was "not the result of force or threats, or of promises apart from those set forth in [the] plea agreement." [ECF 19 at 4]. Moreover, as detailed above, petitioner verbally assured the Court, during his sworn testimony at his re-arraignment, that he understood the proceedings, and that his guilty plea was "freely and voluntarily made" and was "not the result of any force or threats or promises." [ECF 41 at 8, 18]. Petitioner specifically averred to the Court that no one had "threatened" him or "coerced" him or "put any undue pressure" upon him in order to get him to plead guilty. [*Id*. at 24].

Petitioner's prior sworn written and verbal statements directly contradict his current claim that his guilty plea to Count 2 was unknowing and involuntary because of a purported threat by counsel to withdraw if he did not plead guilty, and/or coercion on the part of counsel in advising petitioner would receive the maximum life sentence if he went to trial on all of the charges. Petitioner offers no explanation as to why his sworn testimony at re-arraignment is wholly inconsistent with the assertions he now makes. More importantly, petitioner fails to offer any evidence other than his self-serving, conclusory statements in his affidavit to reliably contradict his prior sworn testimony or to substantiate his current claim that his attorney threatened and coerced his guilty plea. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (a petitioner is required to substantiate allegations that are inconsistent with representations made at a plea colloquy with evidence that has independent indicia of reliability). Petitioner's claim that his guilty plea was involuntary as a result of threats and coercion on the part of his counsel is without merit.

## 2. Promise of a 5-year Sentence

Petitioner also contends his plea was involuntary because counsel improperly promised he would receive a 5-year sentence if he pleaded guilty to Count 2, Attempted Sex Trafficking of a

Child – A.M.; Aiding and Abetting.  As detailed above, however, petitioner signed a Factual Resume and a Plea Agreement wherein he acknowledged his guilty plea to Count 2 subjected him to "imprisonment for a period of not less than ten years." [ECF 19 at 2; 21 at 1].  Petitioner further averred in his Plea Agreement that his plea of guilty was not the result of promises apart from those set forth in the agreement and that there had "been no guarantees or promises from anyone as to what sentence the Court [would] impose." [ECF 19 at 4].

At his re-arraignment, in response to the Court addressing petitioner personally, petitioner averred there had been no guarantees or promises from anyone as to what his sentence would be. [ECF 41 at 18].  The Court also informed him of the mandatory minimum 10-year imprisonment penalty for the offense to which he was pleading guilty, and twice confirmed petitioner understood the minimum 10-year sentence requirement.  [*Id*. at 21-23].  Petitioner again averred to the Court that no one had promised him anything in order to get him to plead guilty and, specifically, that no one had promised him what his sentence was going to be.  [*Id*. at 24-25].  Petitioner confirmed there was nothing about the proceedings that he did not understand.  [*Id*. at 22].

The PSR also clearly noted Count 2 carried a 10-year statutory mandatory minimum sentence and thoroughly addressed the application of the 10-year minimum sentence in determining the Guideline Term of Imprisonment of 120 months.  [ECF 26].  At sentencing, petitioner acknowledged the PSR was correct in its entirety.  [ECF 42 at 5].  Moreover, in addressing the Court during allocution, petitioner acknowledged the minimum 10-year sentence but requested the Court impose a sentence below the minimum.[7] [*Id*. at 6].  In his affidavit, counsel averred he "never" told petitioner "he would receive a 5-year sentence." [ECF 10 at 3].

Again, petitioner's sworn written and verbal statements directly contradict his current

---

[7]Petitioner's statement does appear to indicate he did not have a clear understanding of how the Court was bound by, and required to impose, the 10-year statutory minimum, but does not reflect counsel promised petitioner a 5-year sentence.

claim that his guilty plea to Count 2 was unknowing and involuntary because of an unfulfilled promise by counsel that he would receive a 5-year sentence if he pleaded guilty to Count 2. Petitioner has not attempted to provide any explanation as to the inconsistencies between his sworn testimony and his current claim, nor has he attempted to provide any evidence other than his self-serving, conclusory statement in his affidavit to contradict his prior sworn statements or to reliably substantiate his claim that his attorney made an unfulfilled promise of a specific below-mandatory minimum sentence. For an allegation of an unfulfilled promise to overcome sworn representations, made in court, to the contrary, a petitioner must show: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise. *United States v. Cervantes*, 132 F.3d at 1110. Petitioner has not made such a showing. Petitioner's claim that his guilty plea was involuntary as a result of counsel's unfulfilled promise of a 5-year sentence, a sentence below the mandatory minimum, is without merit.

### 3.  Erroneous Legal Advice

Petitioner also contends his guilty plea to Count 2, Attempted Sex Trafficking of a Child – A.M. was involuntary and unknowing because counsel misadvised him as to the likelihood that the Government would be able to prove he committed the necessary elements of the charged attempted offense, and/or that he aided and abetted Newsome in his commission of the attempted offense. Petitioner contends he told counsel he did not have the intent to meet A.M. or for Newsome to meet A.M. Petitioner thus appears to contend there was not sufficient evidence for the Government to prove the intent element of Count 2, Attempted Sex Trafficking of a Child – A.M., or to prove petitioner aided and abetted Newsome in committing the attempted offense. Petitioner appears to argue counsel should have advised him the evidence was insufficient to

secure a conviction on Count 2 instead of advising him to plead guilty to the offense, and that such misadvice rendered his guilty plea to Count 2 involuntary and unknowing.

Although not clear, petitioner also appears to argue his guilty plea to Count 2 was involuntary and unknowing because counsel misadvised him as to the probability of the Government obtaining a conviction for his "attempt" to sex traffic a child offense involving A.M. Petitioner appears to argue the evidence was insufficient to show he took a "substantial step" to entice or recruit A.M. to engage in a commercial sex act, purportedly equating a "substantial step" in this instance as requiring he set up or arrange a meeting with A.M.[8] Petitioner appears to argue counsel should have advised him the evidence was insufficient to show he "attempted" to recruit or entice A.M. (Count 2) instead of advising him to plead guilty to the offense, and that such misadvice rendered his guilty plea to Count 2 involuntary and unknowing.

Lastly, petitioner contends his plea to Count 2 was involuntary and unknowing because counsel failed to advise him that he had a viable "abandonment" defense to the charged attempt offense. Specifically, petitioner avers he abandoned the "criminal purpose" of enticing or recruiting A.M. to engage in a commercial sex act before the crime was completed and had no knowledge as to whether the crime was completed. Petitioner appears to argue that because he had no other involvement after he enticed or recruited A.M., provided Newsome with A.M.'s contact information and advised him of her interest in engaging in a commercial sex act, that he had abandoned the Attempted Sex Trafficking of a Child – A.M. offense. Petitioner argues counsel should have advised him of this viable defense to Count 2 instead of advising him to plead guilty

---

[8]To be guilty of an "attempt," the defendant must have been acting with the culpability otherwise required for the commission of the crime he is charged with attempting and have engaged in conduct which constitutes a substantial step toward commission of the crime. *United States v. Anderson*, 932 F.3d 344, 350 (5th Cir. 2019).

to the offense, and that such misadvice rendered his guilty plea to Count 2 involuntary and unknowing.

In his Plea Agreement, petitioner assured the Court he had (1) "thoroughly reviewed all legal and factual aspects" of his case with his lawyer; (2) "received from his lawyer explanations satisfactory to him concerning each paragraph of [his] plea agreement, each of his rights affected by [his] agreement, and the alternatives available to him other than entering into [the] agreement"; and (3) concluded, "after conferring with his lawyer," that it was "in his best interest to enter into [the] plea agreement . . . rather than to proceed to trial in this case." [ECF 19 at 4-5]. Petitioner advised the Court he was "fully satisfied" with his "lawyer's legal representation." [*Id*. at 4]. Petitioner averred the facts set forth in the Factual Resume that constituted the offense of Attempted Sex Trafficking of a Child – A.M. were true and correct. [*Id*. at 2].

At his re-arraignment, petitioner verbally averred to the Court that he had read and understood his plea documents, understood the elements of the charged offense to which he was pleading guilty, and understood he was giving up the right to make the Government prove its case beyond a reasonable doubt. [ECF 41 at 11]. Petitioner avowed he was aware he could not plead guilty if he was not, in fact guilty. [*Id*. at 12]. Petitioner further averred he "knowingly attempted to recruit, entice . . . a person that [he] believed was less than eighteen years old . . . to engage in a commercial sex act," and confirmed he committed each of the individual elements of the offense. [*Id*. at 32-34]. Petitioner also assured this Court that he was pleading guilty because he was, in fact, guilty.

Petitioner's assertions of misadvice, if definitively established, could possibly rebut his above written and verbal averments. However, such is not the case here. By his claims of misadvice affecting the voluntariness of his guilty plea, petitioner initially appears to be confused

or mistaken about the necessary elements of the offense of Attempted Sex Trafficking of a Child involving A.M. To commit an offense under 18 U.S.C. § 1594(a), it was not necessary for petitioner to have the intent to actually meet A.M. The elements of the charged offense required only that petitioner knowingly recruited or enticed A.M., knowing or in reckless disregard of the fact that A.M. had not attained the age of 18 years and would be caused to engage in a commercial sex act, and that such recruiting or enticing was in or affecting interstate or foreign commerce. Petitioner does not suggest any valid basis upon which counsel could have properly advised petitioner that the evidence was insufficient to prove he had the requisite intent for the charged offense.[9] Petitioner fails to show counsel misadvised him as to the likelihood of a conviction on Count 2 and that his guilty plea as to Count 2 was involuntary as a result thereof.[10]

Petitioner also appears to be confused or mistaken about what "substantial step" is necessary to constitute an "attempt" to sex traffick a child or an undercover officer posing as a child. Petitioner need only take a "substantial step" to recruit, entice or solicit a person he knew had not attained the age of 18 years in order to engage in a commercial sex act; the additional follow-up, subsequent step of arranging a meeting with the child is not required. Petitioner does not suggest a valid basis upon which counsel could have properly advised petitioner that the evidence was insufficient to show he "attempted" to recruit or entice A.M. Petitioner fails to show counsel misadvised him as to the probability of a conviction on Count 2 and that his guilty plea as to Count 2 was involuntary as a result thereof.

---

[9]Any argument petitioner may make that counsel should have advised the evidence was insufficient to prove petitioner had the intent to knowingly recruit or entice A.M. is also without merit. Petitioner's recruiting or enticing of J.B., the other minor involved in petitioner's relevant criminal conduct, would have rendered such advice suspect.

[10]Petitioner's complaints of counsel's misadvice regarding the proof of intent necessary to show his aiding and abetting liability for Newsome's acts on Count 2 is likewise without merit because petitioner was charged with and held primarily responsible for his own actions. To hold a defendant liable for aiding and abetting an offense, the government must show that elements of the substantive offense occurred and that the defendant "associate[d] with the criminal activity, participate[d] in it, and acted to help it succeed." *United States v. Delagarza–Villarreal*, 141 F.3d 133, 140 (5th Cir. 1997).

Lastly, petitioner contends counsel failed to advise him that he had a viable "abandonment" defense to the charged Attempted Sex Trafficking of a Child – A.M. offense, thereby rendering his guilty plea to Count 2 involuntary.  Apparently acknowledging he knowingly enticed or recruited A.M., supplied Newsome with A.M.'s contact information and advised him of her interest in engaging in a commercial sex act, petitioner appears to contend his subsequent lack of involvement, even traveling out of town, established he had abandoned the attempted sex trafficking of A.M.  Petitioner, however, provides no support for his position, and the undersigned has found none.  Moreover, the undersigned notes that the sex trafficking of children offense occurs primarily in the commission of the act of knowingly recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting a known-to-be underage person, with the knowledge that the minor will be caused to engage in a commercial sex act.  *Cf. United States v. Garcia-Gonzalez,* 714 F.3d 306, 312-13 (5th Cir. 2013) (a sex act does not have to occur to satisfy the elements of the child sex trafficking offense); *United States v. Gandy,* 2018 WL 4852563 (S.D. Tex. Oct. 5, 2018) (fact that the minor victim did not go through with the sex act the defendant intended him to perform did not negate the defendant's intent). Petitioner's argument that his admitted initial actions and then subsequent lack of involvement in the Attempted Sex Trafficking of a Child – A.M. amounted to his abandonment of the crime or constituted a valid defense to the alleged crime is unpersuasive.  More particularly, with regard to this claim, petitioner fails to demonstrate counsel misadvised him as to the viability of an abandonment defense to Count 2 and that his guilty plea as to Count 2 was involuntary as a result thereof.

Petitioner's claim that his guilty plea to Count 2 was involuntary as a result of misadvice from counsel as the sufficiency of the evidence to convict on the charged offense, the viability of

a defense to the charged offense, and/or the ability of the Government to secure a conviction on Count 2 is without merit.

### 3. Conclusion

Although petitioner has presented several conclusory allegations and arguments, he has failed to provide any actual evidence to demonstrate that his guilty plea was not knowing, intelligent and voluntary. Petitioner's self-serving and unsubstantiated claims of an involuntary and unknowing guilty plea not only fail to overcome the "strong presumption of verity" accorded his statements to this Court through his plea documents and at re-arraignment, they also fail to overcome the overwhelming evidence in the record showing his guilty was knowing and voluntary. *See United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002) ("Once again, we give the statements during the colloquy greater weight than we give unsupported, after-the-fact, self-serving revisions."). The undersigned finds the record is replete with evidence that petitioner knowingly and voluntarily entered into the plea agreement.

Moreover, to the extent petitioner alleges he would not have accepted the guilty plea offer had it not been for his attorney's purported threats and coercion, unfulfilled promise and faulty advice, he has failed to direct the Court to any evidence in the record supporting this claim. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (mere conclusory allegations, such as offering nothing more than a petitioner's own statements, do not raise sufficient constitutional issues in a habeas proceeding). If petitioner had not pleaded guilty to one Attempted Sex Trafficking of a Child offense, he would have faced two such charges in addition to a third charge of Attempted Transfer of Obscene Material to a Minor. Petitioner's claims that his guilty plea to Count 2 was invalid because it was not entered voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences is without merit.

B. Ineffective Assistance of Counsel (IAC) Claims

To establish ineffective assistance of counsel, a petitioner must show: (1) his lawyer's performance was deficient; and (2) this deficiency prejudiced his defense. *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (*citing Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). Generally, to prove deficient performance, a petitioner must show: (1) "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment;" and (2) the attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. To prove prejudice, a petitioner must show that his or her attorney made such serious errors that the petitioner was deprived of a fair trial. *Id.* at 687. Stated differently, a petitioner must show that "but for counsel's errors, there is a reasonable probability that the final result would have been different . . . ." *Ramirez v. Dretke*, 398 F.3d 691, 698 (5th Cir. 2005) (*citing Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998)). Failure to prove either deficient performance or prejudice to the defendant "will defeat an ineffective assistance of counsel claim." *Ramirez*, 398 F.3d at 698 (*citing Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998)).

The petitioner bears the burden of proving he is entitled to relief. *Moya v. Estelle*, 696 F.2d 329, 332 (5th Cir. 1983). Moreover, a petitioner must overcome a strong presumption of a reasonably adequate performance by his or her attorney to prove deficiency. *United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005); *see also United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996).

Representation is not ineffective merely because, with the benefit of hindsight, the reviewing court disagrees with counsel's strategic choices. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). In addition, "a conscious and informed decision on trial tactics and strategy

cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill-chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). Failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness. *Green*, 160 F.3d at 1037; *see also United States v. Adams*, 64 F. App'x 417, 2003 WL 1524627, at *1 (*citing Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

## 1. Pre-Plea

Petitioner contends his conviction and sentence should be vacated because he was denied his constitutional right to effective assistance of counsel <u>prior to</u> the entry of his guilty plea. Specifically, petitioner argues counsel was ineffective for failing to adequately investigate to discover exculpatory evidence; failing to advise petitioner either as to the insufficiency of the evidence to prove the charged offense or of the viability of a defense to the charges; improperly advising him of the sentence he would receive if he went to trial on the three (3) charges; and improperly promising he would receive a sentence below the mandatory minimum if he pleaded guilty to one of the offenses.

"By pleading guilty to an offense . . . a criminal defendant waives all non-jurisdictional defects preceding the plea." *United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993).

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [professional] standards.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

As discussed above, petitioner has not shown counsel caused him to enter a plea of guilty

without a full understanding of the nature of the charges against him or the consequences of his plea. Nor has petitioner shown that, but for trial counsel's purported failures, he would not have pleaded guilty to one offense but would have proceeded to trial on all three (3) alleged offenses. For these reasons and those addressed more fully above, the undersigned has found petitioner's guilty plea to Count 2 was voluntarily and knowingly entered.

By virtue of his valid and voluntary guilty plea to Count 2, petitioner has waived any non-jurisdictional claims occurring *prior to* entry of his guilty plea and is now precluded from raising his pre-plea ineffective assistance of counsel claims. Consequently, the undersigned will not address petitioner's claims of counsel's alleged pre-plea deficiencies as ineffective assistance of counsel claims, but notes that the lack of merit of each of petitioner's claims was addressed above as they related to the voluntariness of his guilty plea.[11]

## 2. Sentencing

Petitioner also contends his conviction and sentence should be vacated because he was denied his constitutional right to effective assistance of counsel during the sentencing phase of the criminal proceeding. Petitioner's claims are without merit.

### a. Failure to Object to Use of 2015 Guideline Manual

Petitioner contends the Court improperly used the 2015 Guidelines Manual in computing

---

[11]Petitioner's claim that counsel was deficient because he failed to adequately investigate so as to discover existing material, exculpatory evidence, although waived as it technically constitutes a pre-plea claim of ineffective assistance of counsel, was not addressed in the above discussion on the voluntariness of petitioner's guilty plea to Count 2. As relevant to this claim, petitioner stated in his December 7, 2016 affidavit that "had [counsel] questioned Deswan Newsom, who [had] evidence that would set me free from the charge in the indictment, there is a reasonable probability that the outcome would have been different." Petitioner, however, fails to identify what "exculpatory evidence" such additional investigation would have revealed, assert how such "evidence" would have helped him, or demonstrate how such "evidence" would have resulted in a different result. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of the case. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

petitioner's offense level, criminal history category, and recommended Guideline Imprisonment Range in the PSR.  Petitioner argues he "should have been sentence[d] under the 2008 Sentencing Guidelines" based on his offense date of March 30, 2015-April 3, 2015.  Petitioner asserts the use of the 2015 sentencing guidelines constituted an ex post facto violation and that counsel's failure to object to the use of the 2015 version on this basis was deficient.  Petitioner contends he was prejudiced as a result of counsel's failure to object because any such objection would have been sustained and the Court would have then used the 2008 Guidelines Manual in calculating his sentence.  According to petitioner, this would have resulted in a much less severe punishment for Attempted Sex Trafficking of a Child; Aiding and Abetting, *viz*., because the mandatory minimum 10-year sentence and the 2-level increase for "unduly influencing a minor to engage in prohibited sexual conduct" would not have been applicable.

Section 1B1.11(a) of the United States Sentencing Guidelines (USSG) provides that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."  If, however, "the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.  Here, petitioner was sentenced on January 22, 2016 for an offense committed on March 30, 2015.  Utilizing either date, the 2015 Guidelines Manual was the appropriate version of the guidelines to use in determining petitioner's offense level, criminal history and recommended guideline imprisonment range.  Petitioner fails to set forth any valid reason as to why the 2008 guidelines should have been utilized when none of his offense conduct occurred in or before 2008.  Nor does petitioner specify how the use of the 2015 guidelines violated his rights, other than making a conclusory, unsupported argument of an ex post facto violation.  Petitioner's claim of

ineffective assistance of counsel at sentencing for failing to object to the use of the 2015 guidelines in determining his recommended guideline range is without merit.

### b. Failure to Object to 2-Level Increase for Unduly Influencing a Minor

As noted above, petitioner was assessed a 2-level increase to his base offense level for "otherwise unduly influenc[ing] a minor to engage in prohibited sexual conduct." *See* USSG 2G1.3(b)(2)(B). The application notes of the guideline provision provided, however, that subsection (b)(2)(B) did not apply in a case in which the only "minor" involved in the offense was an undercover law enforcement officer. The application notes also provided, "In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies" because "some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor."

Petitioner argues counsel was deficient because he failed to research the 2-level increase guideline provision for "unduly influenc[ing] a minor to engage in prohibited sexual conduct" to discover it was not applicable in petitioner's case, and also to object to the 2-level increase in the PSR. Petitioner initially argues the increase was not applicable because "[a] person must be ten (10) years older than the victim, [and petitioner] was only four (4) years older than the undercover officer, posing as a 15 year old girl." [ECF 4 at 11]. Petitioner argues counsel's failure to "put forth any evidence" that there was only a 4-year age difference between petitioner and the "minor" resulted in petitioner receiving a harsher sentence, presumably as a result of the 2-level increase being applied. [ECF 3 at 5].

Petitioner's claim is without merit. Although the application notes to the provision provide that a rebuttable presumption arises that the 2-level increase applies where a defendant is at least 10 years older than the minor, it does not render the subsection inapplicable when the defendant is

less than 10 years older than the "minor."  Instead, a *presumption* of applicability simply does not arise.  Any objection to the 2-level increase on the sole basis that there was not a 10-year age difference between petitioner and the purported "minor" would have been frivolous.  Counsel was not deficient for failing to make such an objection.  Nor, as discussed below, can petitioner demonstrate he was prejudiced by any failure of counsel to object to the 2-level increase on this or any other basis.

Petitioner also argues counsel was deficient for failing to object to the 2-level increase on the basis that the only "minor" involved in the offense to which he pled was an undercover law enforcement officer.  In his December 7, 2016 affidavit, petitioner states:

> I informed [counsel] that the two (2) point enhancement of unduly influence did not apply to me but he failed to investigate, had he done so the outcome of the proceeding would have been different.

With regard to this argument, it is not necessary to determine whether the 2-level increase was, in fact, wrongly applied in this case[12] or whether counsel was deficient in failing to object to the increase because petitioner was not prejudiced by any failure on the part of counsel to further research the applicability of the provision or by his failure to object to the 2-level increase in the PSR.  With or without the 2-level increase, petitioner would have still received the same 120-month sentence he received because he was subject to a statutory minimum sentence of 10 years.  Petitioner has not demonstrated counsel's failure to object to the 2-level "unduly influencing" offense level increase prejudiced petitioner in any way.  Petitioner's claim that counsel was ineffective for failing to object to the 2-level increase is without merit.

Petitioner also argues under this ground that counsel was deficient because he "failed to

---

[12]The Court notes petitioner's "relevant conduct" presumably included the attempted sex trafficking of an actual 15-year-old girl, J.B. (*see* Indictment, Count 1) even though the offense to which he pleaded guilty and of which he was convicted only involved an undercover law enforcement officer representing a minor.  [ECF 26-1 at 4].

argue Amendment 732" at petitioner's sentencing hearing.  Amendment 732 to the United States Sentencing Guidelines, effective November 1, 2009, added the provision that the undue influence enhancement does not apply when the only "minor" involved is an undercover officer.  Counsel would not need to "argue Amendment 732" as the provision was already in effect as part of the commentary to §2G1.3 at the time of petitioner's offense and sentencing.  Petitioner's claim that counsel was deficient on this basis is without merit.

In sum, petitioner has failed to show counsel's performance was deficient for failing to take any of the above actions at sentencing, or that petitioner was prejudiced by counsel's perceived deficiencies.  Petitioner's claims of ineffective assistance of counsel during the sentencing phase of the criminal proceeding are without merit and should be denied.

### 4.  Conclusion

Petitioner has failed to show counsel's performance was deficient or how petitioner was prejudiced as a result of such performance.  Petitioner's claims of ineffective assistance of counsel are without merit and should be denied.

### IV.
### RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the *Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* filed by respondent XZAVION DAYSHAUN RAGSDALE be DENIED.

### V.
### INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions

and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED January 15, 2020.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

HAB55/FCR/RAGSDALE-273.DNY-IAC-INVOLPLEA:2